**UNITED STATES of America, Plaintiff,**

v.

**Jeffery JONES, Defendant.**

**No. CRIM.A.99–09–JJF, CIV.A.00–762–JJF.**

United States District Court, D. Delaware.

Oct. 21, 2002.

---

Colm F. Connolly, Esquire, United States Attorney; Robert J. Prettyman, Esquire and Keith M. Rosen, Esquire, Assistant United States Attorneys of the United States Department of Justice, Wilmington, for Plaintiff.

Cheryl J. Sturm, Esquire, of the Law Offices of Cheryl J. Sturm, Chadds Ford, PA, for Defendant.

### MEMORANDUM OPINION

FARNAN, District Judge.

Pending before the Court is a Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside Or Correct Sentence By A Person In Federal Custody (D.I.21) filed by Defendant, Jeffery Jones. For the reasons set forth below, Defendant's Section 2255 Motion will be denied.

### BACKGROUND

On January 12, 1999, Defendant was indicted on two Counts of distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). Pursuant to the

terms of a plea agreement, Defendant pled guilty to one Count, and the Government dismissed the remaining charge in the Indictment. On August 18, 1999, the Court sentenced Defendant to 87 months imprisonment. Defendant did not appeal his conviction or sentence.

On August 18, 2000, Defendant filed the instant Motion under Section 2255 (D.I.21). By his Motion, Defendant contends that: (1) his counsel, Mr. John S. Malik, Esquire, was ineffective for failing to (i) conduct a reasonable pretrial investigation in order to discover whether the contraband was the form of cocaine base known as crack cocaine; (ii) object to the Government's breach of the plea agreement; and (iii) meet with his client and ask him whether he wanted to file an appeal; (2) his constitutional rights were violated because the Indictment did not identify the substance as crack cocaine and did not state the quantity of cocaine base pursuant to the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); (3) the Government breached the plea agreement; and (4) his Due Process rights were violated because he was sentenced based on materially inaccurate information.

The Government filed an Answer (D.I.28), and the Defendant filed a Traverse (D.I.30). Subsequently, pursuant to Rule 8 of the Rules Governing Section 2255 Proceedings, former Judge McKelvie held evidentiary hearings on October 31, 2001, and November 6, 2001. The post-hearing briefing was completed on January 14, 2002 (D.I. 51, 52 & 56), and Defendant's Motion is now ripe for the Court's review.

## DISCUSSION

### I. Defendant's Ineffective Assistance Of Counsel Claims

Defendant contends that his counsel was ineffective at the plea, sentencing, and appeal phases of the representation. To succeed on an ineffective assistance of counsel claim, a defendant must satisfy the two-part test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). The first prong of the *Strickland* test requires a defendant to show that his or her counsel's errors were so egregious as to fall below an "objective standard of reasonableness." *Id.* at 687–88, 104 S.Ct. 2052. In determining whether counsel's representation was objectively reasonable, "the court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052. In turn, the defendant must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound ... strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).

Under the second prong of *Strickland*, the defendant must demonstrate that he or she was actually prejudiced by counsel's errors, meaning that there is a reasonable probability that, but for counsel's faulty performance, the outcome of the proceedings would have been different. *Strickland*, 466 U.S. at 692–94, 104 S.Ct. 2052; *Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir.1992), *cert. denied*, 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993). To establish prejudice, the defendant must also show that counsel's errors rendered the proceeding fundamentally unfair or unreliable. *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Thus, a purely outcome determinative perspective is inappropriate. *Id.*; *Flamer v. State*, 68 F.3d 710, 729 (3d Cir.1995), *cert. denied*, 516 U.S. 1088, 116 S.Ct. 807, 133 L.Ed.2d 754 (1996).

## A. Plea

 Defendant contends that his counsel was ineffective for failing to conduct a reasonable pretrial investigation to determine if the cocaine base at issue was actually crack cocaine. Defendant asserts that had Mr. Malik conducted a reasonable investigation, he would not have advised Defendant to plea to distributing crack cocaine because the sentencing guidelines establish higher penalties for crack than for other types of cocaine base. In response, the Government argues that Mr. Malik's pre-plea investigation was reasonable and the decision to terminate the investigation based on his client's request was also reasonable.

> In the context of defense counsel's duty to investigate, 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.' The reasonableness of counsel's actions may be affected by the defendant's actions and choices, and counsel's failure to pursue certain investigations cannot later be challenged as unreasonable when the defendant has given counsel reason to believe that a line of investigation should not be pursued.

*United States v. Gray*, 878 F.2d 702, 710 (3d Cir.1989)(quoting *Strickland*, 466 U.S. at 690–91, 104 S.Ct. 2052).

Here, Mr. Malik filed a motion to have the cocaine base at issue analyzed by an independent expert. (D.I.13). Mr. Malik then negotiated a stipulation with the Government regarding the procedure to have the independent analysis completed. (D.I. 54 at A–173 to A–175). Subsequently, Mr. Malik met with the Defendant to review the discovery materials provided by the Government. The discovery materials included an audio tape of the Defendant describing the cocaine as "straight drop and pop," a term which Mr. Malik knew to mean crack cocaine. (D.I. 48 at 20:12–19). After discussing the implications of the Defendant's use of this term (D.I. 48 at 21:1–6), Mr. Malik explained the case law to the Defendant regarding the distinction between crack and cocaine base. (D.I. 48 at 19:2–21). Mr. Malik also explained that the Government was not required to show that sodium bicarbonate was present in the cocaine base in order for the Court to find that the cocaine base was crack. (D.I. 48 at 19:22–20:11). Additionally, Mr. Malik told the Defendant that an experienced agent's testimony that the cocaine base was crack would satisfy the Government's burden of proof. *Id.* As a result of these discussions, the Defendant told Mr. Malik to not have the independent retest done. (D.I. 48 at 18:3–7)([AUSA Rosen] "Q. When you say Mr. Jones indicated that he didn't want them tested, did he give you a verbal response? [Mr. Malik] A. Yes. [AUSA Rosen] Q. And he told you he did not want the retest done? [Mr. Malik] A. He said don't bother with the retesting."); (D.I. 48 at 20:12–22).[1] Once the Defendant decided to abandon the retest, Mr. Malik

---

1. [AUSA Rosen] Q. In the course of the discussion, did Mr. Jones tell you what the substance was that was involved in his arrest? [Mr. Malik] A. ... I confess he didn't say that. He told me don't waste the time, don't waste the money with having this tested. We know what it is ... .

[AUSA Rosen] Q. And what conclusions did you draw from those statements? [Mr. Malik] A. I drew from those statements that Jeff didn't want me to go and have the drugs analyzed ... .

negotiated a plea for the Defendant. Mr. Malik and the Defendant discussed the type and amount of cocaine base attributed to the Defendant in the plea agreement and the attached stipulation of facts before the Defendant signed it. (D.I. 48 at 28:10–22).

The Court finds Mr. Malik's testimony credible and further finds that Mr. Malik took the necessary preliminary steps to have the cocaine base tested, advised his client of the relevant law, and then ceased the investigation at the client's request. Based on the above facts and the standard set forth by the Third Circuit in *United States v. Gray*, the Court concludes that Mr. Malik's investigation was objectively reasonable. Therefore, Defendant's contention that Mr. Malik's assistance was ineffective during the plea phase is without merit.

█ Defendant's contention regarding Mr. Malik's assistance during the plea phase also fails because he cannot show the requisite prejudice required under the second prong of the *Strickland* analysis. "Courts have refused to find ineffective assistance of counsel in cases where defendants have received tangible benefits from the plea agreements negotiated by counsel." *Jimenez v. U.S.*, 2001 WL 699060, at *5 (S.D.N.Y.2001)(collecting cases).

Federal law dictates a "term of imprisonment which may not be less than ten years" for violations involving "50 grams or more of a mixture or substance described in clause (ii) which contains cocaine base." 21 U.S.C. § 841(b)(1)(A)(iii)("Section 841"). Here, it is uncontested that the Defendant distributed over 50 grams of cocaine base. (D.I. 21 at 7)("Lab reports indicate the substance was cocaine base."). Thus, pursuant to Section 841, Defendant would have received a minimum mandatory sentence of 10 years (120 months). As a result of the plea negotiat-ed by Mr. Malik, Defendant received a sentence of 87 months, which is 33 months shorter than the minimum mandatory sentence for the offense the Defendant committed. In sum, Defendant received a tangible benefit from Mr. Malik's assistance, and thus, there was no prejudice to Defendant.

█ Additionally, "[i]n plea bargain cases, a petitioner satisfies the prejudice requirement by demonstrating a reasonable probability that but for counsel's erroneous advice, he would not have pleaded guilty and gone to trial." *Scarbrough v. Johnson*, 300 F.3d 302, 306 (3d Cir.2002)(internal quotation marks omitted); *see also U.S. v. Saleh*, 1998 WL 767463, at *3 (E.D.Pa.1998). Here, the Defendant has not shown a reasonable probability nor even alleged that he would not have pleaded guilty and gone to trial. Therefore, in the plea process, there was no prejudice and no ineffective assistance of counsel.

## B. Sentencing

█ Defendant contends that his counsel, Mr. Malik, was ineffective for failing to object at the sentencing hearing to the Government's alleged breach of the plea agreement. Specifically, Defendant asserts that Mr. Malik did not object to the Government's failure to recommend that the Defendant should be placed in the Bureau of Prison 500 hour drug program and its boot camp shock incarceration program. The Government argues that Mr. Malik's conduct was reasonable because there was no breach and that there was no prejudice to the Defendant because the Court was aware of the recommendation.

"When a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration,

such promise must be fulfilled." *United States v. Nolan–Cooper*, 155 F.3d 221, 235 (3d Cir.1998), *quoting Santobello v. New York*, 404 U.S. 257, 262–263, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

In the instant case, the Memorandum of Plea Agreement provides "at sentencing the prosecutor will recommend to the Sentencing Court that the Sentencing Court recommend the defendant for the Bureau of Prisons 500 hours drug program and for any available Shock Incarceration Program under U.S.S.G. § 5F1.7 and 18 U.S.C. § 4046." (D.I. 16 at 2(e)).

At the Defendant's August 18, 1999, Sentencing Hearing before Senior Judge Longobardi, Mr. Malik stated:

> Mr. Jones [i.e., the Defendant] has requested and the Government is going to recommend—I believe they have already recommended it in the plea agreement that we entered before this Court in April—that Mr. Jones be permitted to participate or the Court recommend that Mr. Jones participate in the 500 hour drug program . . . [and] the shock incarceration or boot camp program.

(D.I. 54 at A–209 to A–210).

Additionally, Mr. Prettyman, representing the Government, stated, "Your Honor, first I would like to reaffirm the promises made to the defendant in the plea agreement and *ask the Court grant those requests.*" (D.I. 54 at A–212 to A–213)(emphasis added).

At the November 6, 2001, evidentiary hearing, Mr. Rosen and Mr. Malik had the following exchange regarding Mr. Prettyman's preceding statement:

> Q. And what did you understand that comment to mean?
>
> A. That Mr. Prettyman was asking the Court, he was reaffirming the promises he had made in writing in the plea agreement verbally to the Court at the time of the entry of the plea of guilty, the Change of Plea Hearing in writing, [and] again in the presentence report. He was just saying, judge, I'm reaffirming my promise that's what I said Jeff [i.e., the Defendant] should get that he gets. I'm also asking you—not just reaffirming, I'm asking you here and now to grant Jeff those things.
>
> Q. And that related to the 500 hour drug program and the shock incarceration or boot camp program in that statement?
>
> A. Correct. Yes.

(D.I. 48 at 46:8–19).

■ Based on the Memorandum of Plea Agreement (D.I.16), the Government was obligated to make certain recommendations to the Sentencing Court. The above excerpts from the Sentencing Hearing transcript demonstrate that the Government made those recommendations to the Court, albeit in shorthand form. Mr. Malik's testimony (D.I. 48 at 2–105) provides a basis for the Court to conclude that not objecting to the manner in which the recommendations were made was an objectively reasonable course of conduct. Additionally, Senior Judge Longobardi's denial of the recommendations at the Sentencing Hearing makes it clear that he was aware of them (D.I. 54 at A–216 to A–217), and thus, Defendant was not prejudiced by Mr. Malik's failure to object. Defendant's ineffectiveness of counsel claim fails as to the sentencing phase of Mr. Malik's representation because Defendant has satisfied neither prong of *Strickland*.

## C. Appeal

Defendant contends that Mr. Malik was ineffective for failing to consult with Defendant to determine whether he wanted to file an appeal. Defendant asserts he had two nonfrivolous grounds upon which to appeal: (1) the Government breached

the plea agreement; and (2) his sentence was based on materially inaccurate information. The Government argues that Mr. Malik's failure to consult with the Defendant was reasonable based on the facts of the case and on the applicable law.

In evaluating ineffective assistance of counsel claims stemming from counsel's failure to consult with the defendant about filing an appeal, the United States Supreme Court has provided the following guidance:

> We cannot say, as a constitutional matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient. Such a holding would be inconsistent with both our decision in *Strickland* and common sense. For example, suppose that a defendant consults with counsel; counsel advises the defendant that a guilty plea probably will lead to a 2 year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as expected and informs the defendant of his appeal rights; the defendant does not express any interest in appealing, and counsel concludes that there are no nonfrivolous grounds for appeal. Under these circumstances, it would be difficult to say that counsel is "professionally unreasonable," as a constitutional matter, in not consulting with such a defendant regarding an appeal. Or, for example, suppose a sentencing court's instructions to a defendant about his appeal rights in a particular case are so clear and informative as to substitute for counsel's duty to consult. In some cases, counsel might then reasonably

decide that he need not repeat that information. We therefore reject a bright-line rule that counsel must always consult with the defendant regarding an appeal.

*Roe v. Flores–Ortega,* 528 U.S. 470, 120 S.Ct. 1029, 1036, 145 L.Ed.2d 985 (2000).

■ Here, Mr. Malik did not consult with the Defendant regarding an appeal. However, the Court concludes that the lack of consultation was reasonable because the facts of this case are nearly identical to the hypothetical situation described in *Flores–Ortega.* Mr. Malik advised the Defendant that a guilty plea would likely result in a sentence of 70–87 months. Defendant plead guilty, received a sentence of 87 months, and did not express a timely interest in an appeal. The Court informed the Defendant of his appeal rights,[2] and finally, Mr. Malik correctly concluded that there were no non-frivolous grounds for appeal. *See infra* Section III (concluding that Defendants asserted grounds for appeal are meritless). Consequently, Mr. Malik's failure to consult with the Defendant regarding an appeal was not unreasonable under *Strickland,* and Defendant's claim of ineffective assistance of counsel in the appeal phase must fail.

## II. Defendant's *Apprendi* Claim

■ Relying on the Supreme Court's recent decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), Defendant contends that the Indictment upon which he convicted was fatally flawed because it did not specify an essential element of the offense. Specifically, Defendant contends that the Indict-

---

**2.** At the Defendant's Sentencing Hearing, Senior Judge Longobardi said, "You are advised that you have the right to appeal. If you are unable to pay the cost of an appeal, you have the right to apply for leave to appeal

in forma pauperis. If you so request, the Clerk of Court will immediately prepare and file a notice of appeal on your behalf." (D.I. 54 at A–216).

ment did not identify the substance as crack cocaine and did not state the specific quantity of cocaine base which he was charged with distributing.

The Third Circuit has yet to rule expressly on the question of whether the rule announced by the Supreme Court in *Apprendi* applies retroactively to cases on collateral review. However, this Court has concluded, consistent with the majority of courts addressing the issue, that *Apprendi* does not have retroactive application. *United States v. Robinson*, 2001 WL 840231 (D.Del. Jul.20, 2001) (Farnan, J.) (collecting cases). Accordingly, the Court concludes that Defendant is not entitled to relief on his *Apprendi* claims.

### III. Defendant's Substantive Claims

Defendant contends that the Government breached the plea agreement and that his Due Process rights were violated because he was sentenced based on materially inaccurate information. The Government argues that Defendant waived these substantive claims and that the claims are meritless.

Defendant did not raise the issues in question in an appeal to the Third Circuit. To overcome this procedural default, Defendant must show both "cause" for failing to raise the issue and "actual prejudice." *United States v. Frady*, 456 U.S. 152, 167–170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *United States v. Essig*, 10 F.3d 968, 976–979 (3d Cir.1993).

To the extent that Defendant contends that his attorney's failure to raise the issues constitutes cause, the Supreme Court has held that the attorney's error must rise to the level of ineffective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478 at 486–487, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397. For the reasons discussed in Section I of this Memorandum Opinion, the Court concludes that Defendant cannot establish ineffective assistance of counsel. Therefore, Defendant cannot satisfy the "cause" requirement and his substantive claims are procedurally barred under *Frady*.

Regardless of the procedural bar, Defendant's claims also fail on the merits. As discussed in Section I.B. above, there was no breach of the plea agreement. Moreover, Defendant's claim that he was sentenced on materially inaccurate information is contradicted by his admissions and stipulations in the plea agreement and Pre–Sentence Report. In sum, Defendant's substantive claims are without merit.

### CONCLUSION

For the reasons discussed, the Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside Or Correct Sentence By A Person In Federal Custody filed by Defendant, Jeffery Jones, will be denied.